## MICHIGAN *v.* CLIFFORD ET AL.

No. 82–357.   Argued October 5, 1983—Decided January 11, 1984

288

*Janice M. Joyce Bartee* argued the cause *pro hac vice* for petitioner. With her on the brief were *William L. Cahalan, Edward Reilly Wilson,* and *Timony A. Baughman.*

*K. Preston Oade, Jr.,* argued the cause and filed a brief for respondents.

JUSTICE POWELL announced the judgment of the Court and delivered an opinion, in which JUSTICE BRENNAN, JUSTICE WHITE, and JUSTICE MARSHALL joined.

This case presents questions as to the authority of arson investigators, in the absence of exigent circumstances or consent, to enter a private residence without a warrant to investigate the cause of a recent fire.

Respondents, Raymond and Emma Jean Clifford, were arrested and charged with arson in connection with a fire at their private residence. At the preliminary examination held to establish probable cause for the alleged offense, the State introduced various pieces of physical evidence, most of which was obtained through a warrantless and nonconsensual search of the Cliffords' fire-damaged home. Respondents moved to suppress this evidence on the ground that it was obtained in violation of their rights under the Fourth and Fourteenth Amendments. That motion was denied and respondents were bound over for trial. Before trial, they again moved to suppress the evidence obtained during the search. The trial court conducted an evidentiary hearing and denied the motion on the ground that exigent circumstances justified the search. The court certified its evidentiary ruling for interlocutory appeal and the Michigan Court of Appeals reversed.

That court held that there were no exigent circumstances justifying the search. Instead, it found that the warrantless entry and search of the Clifford residence were conducted pursuant to a policy of the Arson Division of the Detroit Fire Department that sanctioned such searches as long as the owner was not present, the premises were open to trespass, and the search occurred within a reasonable time of the fire. The Court of Appeals held that this policy was inconsistent with *Michigan* v. *Tyler*, 436 U. S. 499 (1978), and that the warrantless nonconsensual search of the Cliffords' residence violated their rights under the Fourth and Fourteenth Amendments. We granted certiorari to clarify doubt that appears to exist as to the application of our decision in *Tyler*. 459 U. S. 1168 (1983).

## II

In the early morning hours of October 18, 1980, a fire erupted at the Clifford home. The Cliffords were out of town on a camping trip at the time. The fire was reported to the Detroit Fire Department, and fire units arrived on the

scene about 5:40 a. m. The fire was extinguished and all fire officials and police left the premises at 7:04 a. m.

At 8 o'clock on the morning of the fire, Lieutenant Beyer, a fire investigator with the arson section of the Detroit Fire Department, received instructions to investigate the Clifford fire. He was informed that the Fire Department suspected arson. Because he had other assignments, Lieutenant Beyer did not proceed immediately to the Clifford residence. He and his partner finally arrived at the scene of the fire about 1 p. m. on October 18.

When they arrived, they found a work crew on the scene. The crew was boarding up the house and pumping some six inches of water out of the basement. A neighbor told the investigators that he had called Mr. Clifford and had been instructed to request the Cliffords' insurance agent to send a boarding crew out to secure the house. The neighbor also advised that the Cliffords did not plan to return that day. While the investigators waited for the water to be pumped out, they found a Coleman fuel can in the driveway that was seized and marked as evidence.[1]

By 1:30 p. m., the water had been pumped out of the basement and Lieutenant Beyer and his partner, without obtaining consent or an administrative warrant, entered the Clifford residence and began their investigation into the cause of the fire. Their search began in the basement and they quickly confirmed that the fire had originated there beneath the basement stairway. They detected a strong odor of fuel throughout the basement, and found two more Coleman fuel cans beneath the stairway. As they dug through the debris, the investigators also found a crock pot with attached wires leading to an electrical timer that was plugged into an outlet

---

[1] The can had been found in the basement by the fire officials who had fought the blaze. The firemen removed the can and put it by the side door where Lieutenant Beyer discovered it on his arrival.

a few feet away. The timer was set to turn on at approximately 3:45 a. m. and to turn back off at approximately 9 a. m. It had stopped somewhere between 4 and 4:30 a. m. All of this evidence was seized and marked.

After determining that the fire had originated in the basement, Lieutenant Beyer and his partner searched the remainder of the house. The warrantless search that followed was extensive and thorough. The investigators called in a photographer to take pictures throughout the house. They searched through drawers and closets and found them full of old clothes. They inspected the rooms and noted that there were nails on the walls but no pictures. They found wiring and cassettes for a video tape machine but no machine.

Respondents moved to exclude all exhibits and testimony based on the basement and upstairs searches on the ground that they were searches to gather evidence of arson, that they were conducted without a warrant, consent, or exigent circumstances, and that they therefore were *per se* unreasonable under the Fourth and Fourteenth Amendments. Petitioner, on the other hand, argues that the entire search was reasonable and should be exempt from the warrant requirement.

### III

In its petition for certiorari, the State does not challenge the state court's finding that there were no exigent circumstances justifying the search of the Clifford home. Instead, it asks us to exempt from the warrant requirement all administrative investigations into the cause and origin of a fire. We decline to do so.

In *Tyler*, we restated the Court's position that administrative searches generally require warrants. 436 U. S., at 504–508. See *Marshall* v. *Barlow's, Inc.*, 436 U. S. 307 (1978); *Camara* v. *Municipal Court*, 387 U. S. 523 (1967); *See* v. *City of Seattle*, 387 U. S. 541 (1967). We reaffirm that view again today. Except in certain carefully defined

classes of cases,[2] the nonconsensual entry and search of property are governed by the warrant requirement of the Fourth and Fourteenth Amendments. The constitutionality of warrantless and nonconsensual entries onto fire-damaged premises, therefore, normally turns on several factors: whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth Amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and, whether the object of the search is to determine the cause of fire or to gather evidence of criminal activity.

## A

We observed in *Tyler* that reasonable privacy expectations may remain in fire-damaged premises. "People may go on living in their homes or working in their offices after a fire. Even when that is impossible, private effects often remain on the fire-damaged premises." *Tyler*, 436 U. S., at 505. Privacy expectations will vary with the type of property, the amount of fire damage, the prior and continued use of the premises, and in some cases the owner's efforts to secure it against intruders. Some fires may be so devastating that no reasonable privacy interests remain in the ash and ruins, regardless of the owner's subjective expectations. The test essentially is an objective one: whether "the expectation [is] one that society is prepared to recognize as 'reasonable.'" *Katz* v. *United States*, 389 U. S. 347, 361 (1967) (Harlan, J., concurring). See also *Smith* v. *Maryland*, 442 U. S. 735, 739–741 (1979). If reasonable privacy interests remain in

---

[2] See, *e. g.*, *Donovan* v. *Dewey*, 452 U. S. 594 (1981) (heavily regulated business); *United States* v. *Biswell*, 406 U. S. 311 (1972) (same); *Colonnade Corp.* v. *United States*, 397 U. S. 72 (1970) (same). The exceptions to the warrant requirement recognized in these cases are not applicable to the warrantless search in this case.

the fire-damaged property, the warrant requirement applies, and any official entry must be made pursuant to a warrant in the absence of consent or exigent circumstances.

## B

A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze. Moreover, in *Tyler* we held that once in the building, officials need no warrant to *remain*[3] for "a reasonable time to investigate the cause of a blaze after it has been extinguished." 436 U. S., at 510. Where, however, reasonable expectations of privacy remain in the fire-damaged property, additional investigations begun after the fire has been extinguished and fire and police officials have left the scene, generally must be made pursuant to a warrant or the identification of some new exigency.

The aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant or to secure the owner's consent to inspect fire-damaged premises.[4] Because determining the cause and origin of a fire serves a compelling public interest, the warrant requirement does not apply in such cases.

---

[3] We do not suggest that firemen fighting a fire normally remain within a building. The circumstances, of course, vary. In many situations actual entry may be too hazardous until the fire has been wholly extinguished, and even then the danger of collapsing walls may exist. Thus, the effort to ascertain the cause of a fire may extend over a period of time with entry and reentry. The critical inquiry is whether reasonable expectations of privacy exist in the fire-damaged premises at a particular time, and if so, whether exigencies justify the reentries.

[4] For example, an immediate threat that the blaze might rekindle presents an exigency that would justify a warrantless and nonconsensual postfire investigation. "Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction." See *Michigan* v. *Tyler,* 436 U. S. 499, 510 (1978).

## C

If a warrant is necessary, the object of the search determines the type of warrant required. If the primary object is to determine the cause and origin of a recent fire, an administrative warrant will suffice.[5] To obtain such a warrant, fire officials need show only that a fire of undetermined origin has occurred on the premises, that the scope of the proposed search is reasonable and will not intrude unnecessarily on the fire victim's privacy, and that the search will be executed at a reasonable and convenient time.

If the primary object of the search is to gather evidence of criminal activity, a criminal search warrant may be obtained only on a showing of probable cause to believe that relevant evidence will be found in the place to be searched. If evidence of criminal activity is discovered during the course of a valid administrative search, it may be seized under the "plain view" doctrine. *Coolidge* v. *New Hampshire*, 403 U. S. 443, 465–466 (1971). This evidence then may be used to establish probable cause to obtain a criminal search warrant. Fire officials may not, however, rely on this evidence to expand the scope of their administrative search without first making a successful showing of probable cause to an independent judicial officer.

The object of the search is important even if exigent circumstances exist. Circumstances that justify a warrantless search for the cause of a fire may not justify a search to gather evidence of criminal activity once that cause has been determined. If, for example, the administrative search is justified by the immediate need to ensure against rekindling, the scope of the search may be no broader than reasonably

---

[5] Probable cause to issue an administrative warrant exists if reasonable legislative, administrative, or judicially prescribed standards for conducting an inspection are satisfied with respect to a particular dwelling. See particularly *Tyler, supra;* see also *Camara* v. *Municipal Court*, 387 U. S. 523, 538 (1967).

necessary to achieve its end. A search to gather evidence of criminal activity not in plain view must be made pursuant to a criminal warrant upon a traditional showing of probable cause.[6]

The searches of the Clifford home, at least arguably, can be viewed as two separate ones: the delayed search of the basement area, followed by the extensive search of the residential portion of the house. We now apply the principles outlined above to each of these searches.

## IV

The Clifford home was a two-and-one-half story brick and frame residence. Although there was extensive damage to the lower interior structure, the exterior of the house and some of the upstairs rooms were largely undamaged by the fire, although there was some smoke damage. The firemen had broken out one of the doors and most of the windows in fighting the blaze. At the time Lieutenant Beyer and his partner arrived, the home was uninhabitable. But personal belongings remained, and the Cliffords had arranged to have the house secured against intrusion in their absence. Under these circumstances, and in light of the strong expectations of privacy associated with a home, we hold that the Cliffords retained reasonable privacy interests in their fire-damaged residence and that the postfire investigations were subject to the warrant requirement. Thus, the warrantless and nonconsensual searches of both the basement and the upstairs areas of the house would have been valid only if exigent circumstances had justified the object and the scope of each.

---

[6] The plain-view doctrine must be applied in light of the special circumstances that frequently accompany fire damage. In searching solely to ascertain the cause, firemen customarily must remove rubble or search other areas where the cause of fires is likely to be found. An object that comes into view during such a search may be preserved without a warrant.

## A

As noted, the State does not claim that exigent circumstances justified its postfire searches. It argues that we either should exempt postfire searches from the warrant requirement or modify *Tyler* to justify the warrantless searches in this case. We have rejected the State's first argument and turn now to its second.

In *Tyler* we upheld a warrantless postfire search of a furniture store, despite the absence of exigent circumstances, on the ground that it was a continuation of a valid search begun immediately after the fire. The investigation was begun as the last flames were being doused, but could not be completed because of smoke and darkness. The search was resumed promptly after the smoke cleared and daylight dawned. Because the postfire search was interrupted for reasons that were evident, we held that the early morning search was "no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence." 436 U. S., at 511.

As the State conceded at oral argument, this case is distinguishable for several reasons. First, the challenged search was not a continuation of an earlier search. Between the time the firefighters had extinguished the blaze and left the scene and the arson investigators first arrived about 1 p. m. to begin their investigation, the Cliffords had taken steps to secure the privacy interests that remained in their residence against further intrusion. These efforts separate the entry made to extinguish the blaze from that made later by different officers to investigate its origin. Second, the privacy interests in the residence—particularly after the Cliffords had acted—were significantly greater than those in the fire-damaged furniture store, making the delay between the fire and the midday search unreasonable absent a warrant, consent, or exigent circumstances. We frequently have noted that privacy interests are especially strong in a private resi-

dence.[7]  These facts—the interim efforts to secure the burned-out premises and the heightened privacy interests in the home—distinguish this case from *Tyler*.  At least where a homeowner has made a reasonable effort to secure his fire-damaged home after the blaze has been extinguished and the fire and police units have left the scene, we hold that a subsequent postfire search must be conducted pursuant to a warrant, consent, or the identification of some new exigency.[8] So long as the primary purpose is to ascertain the cause of the fire, an administrative warrant will suffice.

## B

Because the cause of the fire was then known, the search of the upper portions of the house, described above, could only have been a search to gather evidence of the crime of arson. Absent exigent circumstances, such a search requires a criminal warrant.

Even if the midday basement search had been a valid administrative search, it would not have justified the upstairs search.  The scope of such a search is limited to that reasonably necessary to determine the cause and origin of a fire and to ensure against rekindling.  As soon as the investigators determined that the fire had originated in the basement and had been caused by the crock pot and timer found beneath

---

[7] See, *e. g.*, *Payton* v. *New York*, 445 U. S. 573, 589–590 (1980); *United States* v. *United States District Court*, 407 U. S. 297, 313 (1972).  Reasonable expectations of privacy in fire-damaged premises will vary depending particularly on the type and use of the building involved.  Expectations of privacy are particularly strong in private residences and offices.  There may be, depending upon the circumstances, diminished privacy expectations in commercial premises.

[8] This is not to suggest that individual expectations of privacy may prevail over interests of public safety.  For example, when fire breaks out in an apartment unit of an apartment complex, the exigency exception may allow warrantless postfire investigations where necessary to ensure against any immediate danger of future fire hazard.

the basement stairs, the scope of their search was limited to the basement area. Although the investigators could have used whatever evidence they discovered in the basement to establish probable cause to search the remainder of the house, they could not lawfully undertake that search without a prior judicial determination that a successful showing of probable cause had been made. Because there were no exigent circumstances justifying the upstairs search, and it was undertaken without a prior showing of probable cause before an independent judicial officer, we hold that this search of a home was unreasonable under the Fourth and Fourteenth Amendments, regardless of the validity of the basement search.[9]

The warrantless intrusion into the upstairs regions of the Clifford house presents a telling illustration of the importance of prior judicial review of proposed administrative searches. If an administrative warrant had been obtained in this case, it presumably would have limited the scope of the proposed investigation and would have prevented the warrantless intrusion into the upper rooms of the Clifford home. An administrative search into the cause of a recent fire does not give fire officials license to roam freely through the fire victim's private residence.

## V

The only pieces of physical evidence that have been challenged on this interlocutory appeal are the three empty fuel

---

[9] In many cases, there will be no bright line separating the firefighters' investigation into the cause of a fire from a search for evidence of arson. The distinction will vary with the circumstances of the particular fire and generally will involve more than the lapse of time or the number of entries and reentries. For example, once the cause of a fire in a single-family dwelling is determined, the administrative search should end, and any broader investigation should be made pursuant to a criminal warrant. A fire in an apartment, on the other hand, may present complexities that make it necessary for officials to conduct more expansive searches, to remain on the premises for longer periods of time, and to make repeated entries and reentries into the building. See *Tyler*, 436 U. S., at 510, n. 6.

cans, the electric crock pot, and the timer and attached cord. Respondents also have challenged the testimony of the investigators concerning the warrantless search of both the basement and the upstairs portions of the Clifford home. The discovery of two of the fuel cans, the crock pot, the timer and cord—as well as the investigators' related testimony—were the product of the unconstitutional postfire search of the Cliffords' residence. Thus, we affirm that portion of the judgment of the Michigan Court of Appeals that excluded that evidence. One of the fuel cans was discovered in plain view in the Cliffords' driveway. This can was seen in plain view during the initial investigation by the firefighters. It would have been admissible whether it had been seized in the basement by the firefighters or in the driveway by the arson investigators. Exclusion of this evidence should be reversed.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment.

Because I continue to hold the views expressed in my separate opinions in *Michigan* v. *Tyler*, 436 U. S. 499, 512 (1978), *Marshall* v. *Barlow's, Inc.*, 436 U. S. 307, 325 (1978), *Zurcher* v. *Stanford Daily*, 436 U. S. 547, 577–578, 583 (1978), and *Donovan* v. *Dewey*, 452 U. S. 594, 606–608 (1981), I am unable to join JUSTICE POWELL's opinion. I do agree with him, however, that the holding in *Tyler* supports the judgment commanded by his opinion.

There is unanimity within the Court on three general propositions regarding the scope of Fourth Amendment protection afforded to the owner of a fire-damaged building. No one questions the right of the firefighters to make a forceful, unannounced, nonconsensual, warrantless entry into a burning building. The reasonableness of such an entry is too plain to require explanation. Nor is there any disagreement concerning the firemen's right to remain on the premises, not only until the fire has been extinguished and they are satisfied that there is no danger of rekindling, but also while they

continue to investigate the cause of the fire. We are also unanimous in our opinion that after investigators have determined the cause of the fire and located the place it originated, a search of other portions of the premises may be conducted only pursuant to a warrant, issued upon probable cause that a crime has been committed, and specifically describing the places to be searched and the items to be seized. The issues that divide us in this case are (1) whether the entry by Lieutenant Beyer and his partner at 1:30 p. m. should be regarded as a continuation of the original entry or a separate postfire search, and (2) whether a warrantless entry to make a postfire investigation into the cause of a fire without the owner's consent is constitutional.

## I

I agree with JUSTICE POWELL's conclusion that Lieutenant Beyer's entry at 1:30 p. m. was a postfire search rather than merely a continuation of an earlier valid entry, *ante*, at 296, and disagree with JUSTICE REHNQUIST's position that our decision in *Tyler* is indistinguishable in this regard, *post*, at 306–307. In *Tyler* the Court was willing to treat early morning reentries by the same officers who had been on the premises a few hours earlier[1] as a "continuation" of their earlier valid investigation into the cause of the fire. 436 U. S., at 511. The attempt to ascertain the cause of the fire was temporarily suspended in *Tyler* because visibility was severely hindered by darkness, steam, and smoke. Under these circumstances, the return of the same[2] investigators shortly after daybreak to ascertain the cause of the fire was indeed "no more than an actual continuation" of their earlier

---

[1] Fire Chief See entered with Assistant Chief Somerville at 8 a. m. and Detective Webb accompanied Somerville at 9 a. m. See had been on the scene at 2 a. m. and Webb had arrived at 3:30 a. m. See 436 U. S., at 501–502.

[2] It is true that in *Tyler* Assistant Chief Somerville first arrived on the scene at 8 a. m., but presumably he did not observe anything that was not also seen by Chief See or Detective Webb, both of whom had been on the scene earlier.

valid search. *Ibid.* Unlike *Tyler*, in this case the challenged entry was made by officers who had not been on the premises at the time of an earlier valid search. Moreover, in contrast to *Tyler*, an investigation of the fire's origin was not temporarily suspended on account of the conditions at the scene and resumed at the first opportunity when the conditions hampering the investigation subsided. While the investigators in this case waited for the work crew on the scene to pump water out of the basement before making their entry, the delay in their arrival at the scene apparently had nothing to do with the fact that water had collected in the basement. While that fact might have justified a temporary suspension of an investigative effort commenced by investigators at the scene before the premises were abandoned by fire officials, in this case it amounts to a *post hoc* justification without apparent basis in reality. In general, unless at least some of the same personnel are involved in a return to the premises and the temporary departure was justifiably and actually occasioned by the conditions at the premises, I would apply the test expressed by JUSTICE WHITE for measuring the scope of the emergency that justified the initial entry and search: "[O]nce the fire has been extinguished and the firemen have left the premises, the emergency is over." *Id.*, at 516. I would only add that the departure of the firemen should also establish a presumption that the fire has been extinguished and that any danger of rekindling is thereafter too slight to provide an independent justification for a second entry, a presumption that could only be rebutted by additional information demonstrating a previously unknown or unrecognized danger of rekindling.

## II

Presumably most postfire searches are made with the consent of the property owner. Once consent is established, such searches, of course, raise no Fourth Amendment issues. We therefore are concerned with the fire investigator's right to make an entry without the owner's consent, by force if

necessary. The problem, then, is to identify the constraints imposed by the Fourth Amendment on an officer's authority to make such an entry.

In this context, the Amendment might be construed in at least four different ways. First, the Court might hold that no warrantless search of premises in the aftermath of a fire is reasonable and that no warrant may issue unless supported by probable cause that a crime has been committed. Such a holding could be supported by reference to the text of the two Clauses of the Fourth Amendment.[3] No Member of the Court, however, places such a strict construction on the Amendment.

Second, the Court might hold that no warrantless search is reasonable but allow postfire searches conducted pursuant to a warrant issued without a showing of probable cause. Following *Marshall* v. *Barlow's, Inc.*, *supra*, JUSTICE POWELL takes this position. In my judgment that position is at odds with the text of the Fourth Amendment and defeats the purpose of the Warrant Clause, enabling a magistrate's rubber stamp to make an otherwise unreasonable search reasonable.

Third, the Court might hold that no warrant is ever required for a postfire search. If the search is conducted promptly and if its scope is limited to a determination of the cause of the fire, it is reasonable with or without probable cause to suspect arson. JUSTICE REHNQUIST has persuasively outlined the basis for that position,[4] and has noted that

---

[3] As I noted in *Marshall* v. *Barlow's, Inc.*, 436 U. S. 307 (1978):

"The first Clause states that the right to be free from unreasonable searches 'shall not be violated';[1] the second unequivocally prohibits the issuance of warrants except 'upon probable cause.'[2]" *Id.*, at 326.

"[1] 'The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . .'" *Id.*, at 326, n. 1.

"[2] '[A]nd no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Id.*, at 326, n. 2.

[4] To the extent, however, that he relies on the danger of rekindling, I believe his analysis is flawed. I would suppose that JUSTICE POWELL

in certain cases there may be some justification for requiring the inspectors to notify the building's owners of the inspection. *Post*, at 311, n. 4.

A fourth position—the one I believe the two Clauses of the Fourth Amendment command—would require the fire investigator to obtain a traditional criminal search warrant in order to make an unannounced entry, but would characterize a warrantless entry as reasonable whenever the inspector either had given the owner sufficient advance notice to enable him or an agent to be present, or had made a reasonable effort to do so.[5]

Unless fire investigators have probable cause to believe the crime of arson has been committed, I believe that the homeowner is entitled to reasonable advance notice that officers are going to enter his premises for the purpose of ascertaining the cause of the fire. Such notice would give the owner a fair opportunity to be present while the investigation is conducted, virtually eliminating the need for a potentially confrontational forcible entry. Advance notice of the search is the best safeguard of the owner's legitimate interests in the privacy of his premises, allowing him to place certain possessions he would legitimately prefer strangers not to see out of sight, and permitting him to be present during the search

---

would also dispense with a warrant requirement if that danger were present. Surely I would. For analytical purposes, I believe we must assume that the postfire investigation cannot be supported on an emergency rationale but rather is justified by the general regulatory interest in preventing similar fires, including those set by arsonists.

[5] By prohibiting the issuance of any warrant to make an unannounced, nonconsensual entry into the home, unless there is probable cause to believe a crime has been committed, my reading of the Fourth Amendment carries out the express purpose of the Warrant Clause. JUSTICE POWELL's view that a so-called administrative warrant will suffice does not, I submit, provide the protection contemplated by that Clause. On the other hand, because I am persuaded that a postfire investigatory search is reasonable—even without either suspicion or probable cause—when advance notice is given to the homeowner, the purpose of the Reasonableness Clause can be satisfied without obtaining an administrative warrant that is nothing more than a rubber stamp.

to assure that it does not exceed reasonable bounds. Moreover, the risk of unexplained harm or loss to the owner's personal effects would be minimized, and the owner would have an opportunity to respond to questions about the premises or to volunteer relevant information that might assist the investigators. It is true, of course, that advance notice would increase somewhat the likelihood that a guilty owner would conceal or destroy relevant evidence, but it seems fair to assume that the criminal will diligently attempt to cover his traces in all events. In any event, if probable cause to believe that the owner committed arson is lacking, and if the justifications for a general policy of unannounced spot inspections that obtain in some regulatory contexts are also lacking, a mere suspicion that an individual has engaged in criminal activity is insufficient to justify the intrusion on an individual's privacy that an unannounced, potentially forceful entry entails.

Since there was no attempt to give any kind of notice to respondents, this case does not provide a proper occasion for defining the character of the notice that must be given. I am convinced, however, that a nonexigent, forceful, warrantless entry cannot be reasonable unless the investigator has made some effort to give the owner sufficient notice to be present while the investigation is made. Naturally, if the owner is given reasonable notice and then attempts to interfere with the legitimate performance of the fire investigators' duties, appropriate sanctions would be permissible.

If there is probable cause to believe that a crime has been committed, the issuance of a valid warrant by a neutral magistrate will enable the entry and subsequent search to be conducted in the same manner as any other investigation of suspected criminal conduct, without advance notice to the property owner. In such a case, the intrusive nature of the potentially forceful entry without prior notice is justified by the demonstrated reasonable likelihood that the owner of the property will conceal or destroy the object of the search if

prior notice is provided. *Zurcher* v. *Stanford Daily*, 436 U. S., at 582 (STEVENS, J., dissenting).

In this case, as JUSTICE REHNQUIST has pointed out, *post*, at 310, n. 3, an argument may be made that the notice requirement is inapplicable because the owners were out of town. But no attempt whatever was made to provide them with notice, or even to prove that it would have been futile to do so. The record does not foreclose the possibility that an effort to advise them, possibly through the same party that notified the representatives of the insurance company to board up the building, might well have resulted in a request that a friend or neighbor be present in the house while the search was carried out and thus might have avoided the plainly improper search of the entire premises after the cause of the fire had already been identified.

I therefore conclude that the search in this case was unreasonable in contravention of the Fourth Amendment because the investigators made no effort to provide fair notice of the inspection to the owners of the premises. Accordingly, I concur in the Court's judgment.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE, JUSTICE BLACKMUN, and JUSTICE O'CONNOR join, dissenting.

Six Terms ago in *Michigan* v. *Tyler*, 436 U. S. 499 (1978), we first addressed the applicability of the Fourth Amendment's Warrant Clause to the activities of firefighters and inspectors following a fire at a furniture store. A divided Court held that the fire itself was an "exigent circumstance" which allowed entry to extinguish the fire and authorized investigators to remain for a reasonable time to investigate the cause of the blaze. *Id.*, at 509–510. We also held that a "re-entry" a few hours after these officials had departed was an "actual continuation" of the earlier investigation, but that subsequent visits more than three weeks after the fire required an administrative warrant. *Id.*, at 511. These pre-

cepts of *Tyler* have not proved easy to apply, and we are told in the plurality opinion in this case that "[w]e granted certiorari to clarify doubt that appears to exist as to the application of our decision in *Tyler*." *Ante*, at 289. But that same opinion demonstrates beyond peradventure that if that was our purpose, we have totally failed to accomplish it; today's opinion, far from clarifying the doubtful aspects of *Tyler*, sows confusion broadside. I would hold that the "exigent circumstances" doctrine enunciated in *Tyler* authorized the search of the basement of the Clifford home, although the remaining parts of the house could not have been searched without the issuance of a warrant issued upon probable cause.

## I

Judging simply by comparison of these facts to those in *Tyler*, I believe that the basement inspection conducted by Lieutenant Beyer about 1:30 p. m. on October 18th—some six hours after the fire was extinguished and the fire officials and police had left the Clifford premises—was an "actual continuation" of the original entry to fight the fire, as that term is used in *Tyler*. The firefighters who fought the blaze at the Clifford house had removed a can containing Coleman lantern fuel and placed it in the driveway of the home, where it was later seized and marked as evidence by the inspectors who arrived about 1 p. m. Thus here, as in *Tyler*, the investigation into the cause of the fire went on contemporaneously with the efforts to fight it, before the firefighters first left the premises in the early morning. I see no reason to treat the 6-hour delay between the departure of the firefighters and the arrival of the investigators in this case any differently than the Court treated the 5-hour delay between the departure of the investigators at 4 a. m. from the Tyler store and their return to the same premises at 9 a. m.

The plurality seeks to distinguish the two situations on the basis of differences which seem to me both trivial and imma-

terial. It says that in that interim in our case, the Cliffords "had taken steps to secure their privacy interests that remained in their residence against further intrusion." *Ante,* at 296. While this may go to the question of whether or not there was an invasion of a privacy interest amounting to a search, it has no bearing on the question of whether there were exigent circumstances which constitute an exception to the warrant requirement for what is concededly a search. The plurality also intimates that the "firefighters" did nothing but fight the fire, and that the arson investigation did not begin until the arson investigators arrived at 1 o'clock in the afternoon. *Ibid.* But firefighting and fire investigation are obviously not this neatly compartmentalized, as is shown by the fact that the firefighters themselves were alert to signs of the cause of the fire and had removed the Coleman lantern fuel can for inspection by the later team of arson investigators.

The plurality also purports to distinguish the facts in *Tyler* by the statement that "the privacy interests in the residence—particularly after the Cliffords had acted—were significantly greater than those in the fire-damaged furniture store . . . ." *Ante,* at 296. But if the furniture store in *Tyler* is to be characterized as "fire-damaged," surely the Cliffords' residence deserves the same characterization; it too was "fire-damaged." It is also well established that private commercial buildings in this context are as much protected by the Fourth Amendment as are private dwellings. See *See* v. *City of Seattle,* 387 U. S. 541, 542–543 (1967) (citing cases). And certainly the public interest in determining the cause and origin of a fire in a commercial establishment applies with equal, if not greater, force to the necessity of determining the cause and origin of a fire in a home.

On the authority of *Tyler,* therefore, I would uphold the search of the Clifford basement and allow use of the evidence resulting from that search in the arson trial.

## II

In *Camara* v. *Municipal Court*, 387 U. S. 523 (1967), and *See* v. *City of Seattle, supra,* this Court imposed a warrant requirement on city housing and fire inspectors requiring them to obtain an administrative search warrant prior to entering a building to inspect for possible health or fire code violations. To protect the privacy interests of building owners from the unbridled discretion of municipal inspectors, the Court held that administrative searches had to be conducted pursuant to a warrant obtained from an independent magistrate. *Camara, supra,* at 534. But in light of the important public interest in abating public health hazards, the relatively limited invasion of privacy inhering in administrative searches, and the essentially noncriminal focus of the inspection, a different kind of warrant was established, a warrant described by the dissent in that case as "newfangled." *See, supra,* at 547 (Clark, J., dissenting). Probable cause to issue this kind of warrant did not sound in terms of suspicion of criminal activity, but in terms of reasonable legislative or administrative standards governing the decision to search a particular building. *Camara, supra,* at 538.

One may concede the correctness of the *Camara-See* line of cases without agreeing that those cases should be applied to a prompt postfire inspection conducted to determine the cause and origin of a fire. The practice of investigating the cause and origin of fires has longstanding and widespread acceptance. The public interest in conducting a prompt and careful investigation of the cause and origin of all fires is also undeniably strong. An investigation can reveal whether there is a danger of the fire rekindling and assess the effectiveness of local building codes in preventing and limiting the spread of fire. It may bring to light facts suggesting the crime of arson. Entry is also necessary because the causes of a fire may also not be observable from outside a building or by an uninformed occupant. See *United States* v. *Green,* 474 F. 2d

1385, 1388–89 (CA5 1973). Certainly these reasons justify a search to determine the cause and origin of a fire.

The concerns regarding administrative searches expressed in *Camara* and *See* to justify the imposition of a warrant requirement simply do not apply to a postfire investigation conducted within a reasonable time after a fire.[1] Under the emergency doctrine, it is beyond dispute that firefighters may enter a building in order to extinguish the flames. *Michigan* v. *Tyler*, 436 U. S., at 509. In their efforts to control the blaze firefighters may knock in doors and windows, chop holes in roofs and walls, and generally take full control of a structure to extinguish a fire. In the aftermath of a fire an individual is unlikely to have much concern over the limited intrusion of a fire inspector coming into his premises to learn why there had been a fire. Fire victims, unlike occupants at ordinary times, generally expect and welcome the intrusions of fire, police, and medical officials in the period following a fire. Likewise, as here, relative strangers such as insurance agents will frequently have authority to enter the structure. In these circumstances, the intrusion of the fire inspector is hardly a new or substantially different intrusion from that which occurred when the firefighters first arrived to extinguish the flames. Instead, it is analogous to intrusions of medical officials and insurance investigators who may arrive at the scene of the fire shortly after its origin.

Ample justification exists for a State or municipality to authorize a fire inspection program that would permit fire inspectors to enter premises to determine the cause and origin of the fire. But in no real sense can the investigation of

---

[1] What constitutes a reasonable time would have been determined on a case-by-case basis. Fire investigators may have more than one fire to investigate on any given day. In addition, fire investigators are entitled to wait until the embers and gasses of the fire have cooled, or as here, until the water pumped into the structure by the firefighters is pumped out.

the Cliffords' home be considered the result of the unbridled discretion of the city fire investigators who came to the Cliffords' home.[2] No justification existed to inspect the Cliffords' home until there was a fire. The fire investigators were not authorized to enter the Cliffords' home until the happening of some fortuitous or exigent event over which they had no control. Thus, if the warrant requirement exists to prevent individuals from being subjected to an unfettered power of government officials to initiate a search, a warrant is simply not required in these circumstances to limit the authority of a fire investigator, so long as his authority to inspect is contingent upon the happening of an event over which he has no control.[3]

In my view, the utility of requiring a magistrate to evaluate the grounds for a search following a fire is so limited that the incidental protection of an individual's privacy interests simply does not justify imposing a warrant requirement. Here the inspection was conducted within a short time of

---

[2] This is made abundantly clear by the Detroit Fire Department's policy regulating postfire investigations. That policy encourages investigators to conduct an investigation as promptly as possible. If the property is occupied or is a place of business trying to conduct business, inspectors are instructed to obtain consent or an administrative warrant. If the premises are occupied by children, inspectors must obtain consent from an adult before entry. To inspect premises secured from trespass, investigators must obtain consent or an administrative warrant. Only if the owners are away and the building open to trespass may fire investigators enter without consent or a warrant. App. 9a, 12a, 19a (testimony of Lt. Beyer and Capt. Monroe).

[3] The *Tyler* majority stated that a *major* function of the warrant requirement was to provide a property owner with sufficient information to reassure him of the legality of the entry. *Michigan* v. *Tyler*, 436 U. S. 499, 508 (1978). The relationship of this informational function and the privacy interest protected by the Fourth Amendment is not clear. Proper identification or some attempt at notifying the owners could allay any reasonable fears that the inspectors are impostors or lack authority to inspect for the origin and cause of the fire.

extinguishing of the flames, while the owners were away from the premises, and before the premises had been fully secured from trespass.   In these circumstances the search of the basement to determine the cause and origin of the fire was reasonable.[4]

---

[4] As noted in n. 3, *supra*, there may be some justification for requiring the inspectors to contact or attempt to contact the building's owners as to the inspection.   But where, as here, the owners were out of town, it does not appear unreasonable to have conducted the inspection without prior notice to the owners.   Notice simply informs the building owners that the building will be entered by persons possessing authority to enter the building.   Yet the failure to notify the Cliffords prior to entry fails to advance in any significant way the purposes of the exclusionary rule.   In point of fact, the fire investigators were told the Cliffords were unavailable, that they had gone fishing.   App. 16a.   Thus, in these circumstances the failure to notify the Cliffords seems reasonable.   The Cliffords can also be deemed to have received constructive notice, because their agents were on the scene, and a neighbor apparently ascertained the legitimacy of the inspectors' visit.