THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LESTER ZEISLER, Defendant-Appellant.

Third District   No. 3—84—0066

Opinion filed June 29, 1984.—Rehearing denied August 7, 1984.

Robert Agostinelli and Verlin R.F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

John R. Clerkin, State's Attorney, of Macomb (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Lester Zeisler, was convicted of aggravated arson and was sentenced to a 30-year term of imprisonment. In a previous appeal, we affirmed the defendant's conviction and sentence. *People v. Zeisler* (1983), 112 Ill. App. 3d 788.

Pursuant to a writ of *certiorari*, the United States Supreme Court vacated the judgment and remanded the cause, instructing us to reconsider one of the issues in light of *Michigan v. Clifford* (1984), 464 U.S. 287, 78 L. Ed. 2d 477, 104 S. Ct. 641. The defendant was found guilty of setting fire to his apartment, causing severe injuries to his wife. The issue we are to reconsider is whether a warrantless search of the defendant's apartment by a fire inspector violated the defendant's fourth and fourteenth amendment rights. The facts are set forth at length in our earlier opinion. However, a brief summary of the relevant facts would be helpful.

The Bushnell fire department responded to a fire at the defendant's apartment at approximately 12:30 a.m. on July 1, 1981. The fire was quickly brought under control. Chief Niestradt entered the apartment to make sure the fire was out and to determine the cause of the fire. Because he lacked expertise in fire origin investigation, Niestradt could not ascertain the cause of the fire. He and the other firemen secured the premises and placed signs on the door prohibiting entry by order of the State Fire Marshal. The firemen left by 2 a.m.

At 6:30 that morning, Niestradt called Hollis Miller, the area deputy fire marshal, who arrived at around noon. Miller and Niestradt

entered the defendant's apartment but decided that they needed a warrant. After being advised that a warrant was unnecessary, they returned to the apartment. When Miller began to suspect arson, he secured a search warrant and completed his investigation.

In our first opinion, we found the search to be lawful based on *Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942. In *Tyler*, the court upheld the warrantless post-fire search of a furniture store where smoke and darkness interrupted a search begun immediately after the fire. The later search was found to be a continuation of the initial search. *Michigan v. Clifford* elaborated upon and clarified *Tyler*.

In *Clifford*, a fire started at the defendant's home while they were out of town. The blaze was extinguished within an hour and a half, after which all fire and police personnel left the scene. A fire investigator was called within the hour but arrived five hours later. The investigators found that the house was being boarded up at the defendant's request. The investigators entered the house without a warrant and seized evidence of arson.

■ The trial court denied the defendant's motion to suppress. The appellate court reversed. The United States Supreme Court held that the warrantless search violated the defendant's fourth amendment rights. The justices set out a three-part test for determining the constitutionality of a post-fire search: (1) a court must first determine the expectations of privacy which remain in the fire damaged property; (2) the expectations of privacy must be weighed against possible exigent circumstances which justify an exception to the warrant requirement; (3) the court must determine the object of the search. If the purpose is to determine the cause of the fire, an administrative warrant will suffice. If the purpose is to gather evidence of criminal activity, then a search warrant is needed.

Privacy expectations will vary with the type of property, the amount of fire damage, the prior and continued use of the premises, and in some cases the owner's efforts to secure it against intruders. The test is essentially an objective one; whether the expectation is one that society is prepared to recognize as reasonable. *Michigan v. Clifford* (1984), 464 U.S. 287, 292, 78 L. Ed. 2d 477, 483, 104 S. Ct. 641, 646.

In *Clifford*, a home was rendered uninhabitable by fire. The court found a reasonable expectation of privacy because personal property remained on the premises and the defendants had arranged to have the house secured until they returned.

■ Here, the defendant's apartment was heavily damaged but

not completely destroyed. Although personal property remained, the defendant made no effort to secure the premises despite having had ample opportunity to do so. The fire department, on its own initiative, secured the apartment in an effort to preserve evidence. Under these circumstances, we find that the defendant's expectation of privacy was much less than in *Clifford*. Accordingly, we do not believe that the defendant had a reasonable expectation of privacy in the fire damaged premises.

■ Regardless of the defendant's expectations of privacy, we find that under the second part of the *Clifford* test, exigent circumstances permitted the warrantless entry. In *Clifford*, the court held that the search could not be considered a continuation of the initial post-fire examination of the premises because police and fire units had left the scene and the owners had taken measures to secure the house.

In the present case, the post-fire investigation was inconclusive as to the cause of the fire, due to Chief Niestradt's lack of investigative expertise. Therefore, the initial investigation was incomplete. Chief Niestradt is not a full-time fire fighter. The fire occurred after midnight in a small rural town with no fire marshal or investigator. We believe that Niestradt acted reasonably in suspending his investigation until an expert could be located. This situation is analogous to postponing a search until the smoke clears and the proper tools become available. Furthermore, the defendant never made any attempt to secure the premises as did the owners in *Clifford*. Under these circumstances, we believe that the investigation was carried out with all possible dispatch. The search of the defendant's apartment was not so detached from the initial attempt to determine the cause of the fire as to require a warrant.

Also, we note that Chief Niestradt was faced with a fire in a unit of an apartment complex. One of the occupants had suffered near fatal injuries and the cause of the fire was unknown. As the court in *Clifford* pointed out in a footnote: "A fire in an apartment, on the other hand, may present complexities that make it necessary for officials to conduct more expansive searches, to remain on the premises for longer periods of time, and to make repeated entries and re-entries into the building." (464 U.S. 287, 298 n.9, 78 L. Ed. 2d 477, 487 n.9, 104 S. Ct. 641, 649 n.9.) As soon as was reasonably possible after the fire, Chief Niestradt took steps to ascertain the cause of the fire. This made it necessary for Niestradt and the investigator to re-enter the apartment later in the day. As soon as the investigators suspected arson, they obtained a search warrant, as required by *Clifford*.

In *Clifford*, fire officials were confronted with a fire in a single-

family dwelling and arson was initially suspected. When evidence of arson was later discovered, the investigators did not stop to obtain a warrant, but completed their search and seized evidence. Thus, the facts in *Clifford* are distinguishable and do not control in the present case.

Having found that the defendant did not retain a reasonable expectation of privacy in the fire-damaged apartment and considering the exigent circumstances surrounding the post-fire investigation, no warrant was required under *Clifford* in order for Niestradt to re-enter the premises along with Deputy Fire Marshal Miller. The judgment of the circuit court of McDonough County denying the defendant's motion to suppress is affirmed.

Affirmed.

ALLOY, P.J., and STOUDER, J., concur.