[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MAY 22, 1997
In this criminal prosecution, defendant stands charged with the crime of arson in the first degree in violation of General Statutes § 53a-111; conspiracy to commit arson in the first degree in violation of § 53a-48 and § 53a-111: insurance fraud in violation of § 53a-215; conspiracy to commit insurance fraud in violation of § 53a-48 and § 53a-215; and the crime of false statement in violation of § 53a-157.
It is alleged that all such crimes occurred on March 25, 1995.
Defendant has filed a motion to suppress all evidence seized in searches of defendant's premises at 293 Boston Post Road, Old Lyme, claiming that the property was seized without a warrant under circumstances requiring a warrant. The motion was filed pursuant to Connecticut Practice Book § 820. Section 821 requires that the court suppress potential evidence if it finds that suppression is required under the Constitution or laws of the United States or the state of Connecticut.
The evidence leads to a finding that at about 8:00 p. m. on March 25, 1995, the Old Lyme Volunteer Fire Department received a call concerning a structure fire. Responding to the call about seven minutes later, it was discovered that a two-story, single-family residence was on fire at 293 Boston Post Road in Old Lyme. The fire was then well involved and had broken through the rear of the structure. It was necessary to call for mutual aid from surrounding communities.
The fire was under control about 11:38 p. m. and fire suppression was concluded about 1:30 a.m. on March 26, 1995, with fire fighters and apparatus departing at that time. There was CT Page 4991 extensive damage to the house, but it was still standing although not habitable.
Mike Laria, a detective with the state Fire Marshal's Office was called to the fire by the local fire marshal. Detective Laria was informed that because of a possible conflict of interest arising from litigation between the property owners and the local fire marshal he was being asked to investigate the fire. He arrived around 9:17 p. m. while fire suppression was still in progress.
It was not possible for Detective Laria to conduct much of an investigation at the time. The fire was still ongoing and it would have been hazardous to poke around in the building even if it were possible. He did get a written statement from a fire fighter and gave instructions to a state trooper to locate the property owners, defendants, and get a statement from them.
Defendants were on the premises, but there is no evidence that they took any action with respect to the house at any time during the evening or during the following day.
Detective Laria caused Jeff Vandemere, then an Old Lyme police officer, to come to the fire scene to provide security. Officer Vandemere arrived at about 11:00 p. m. At Detective Laria's direction, he secured the area by putting yellow fire marshal's tape around the burned-out area.
Knowing that a team from the state Fire Marshal's Office would arrive in the morning to investigate the cause and origin of the fire, Detective Laria left at 11:55 p. m. and did not return.
Officer Vandemere remained on duty until 8:30 a.m. on March 26th. He kept watch and made certain that no one entered the fire scene and that it was not disturbed. The officer did not leave the premises until he was relieved by officers from the state Fire Marshal's Office.
Detectives from the state Fire Marshal's Office arrived on the scene to conduct an investigation into the cause and origin of the fire. The investigation and search was conducted without a search warrant.
Detective Flanagan of the state Fire Marshal's Office took a CT Page 4992 number of photographs of the interior and exterior of the fire-damaged building.
Detective Baxter arrived at the scene around 10:07 a.m. He entered the building and cleared away some of the debris looking for points of origin of the fire. Detective Baxter brought in a dog to aid in the investigation. This animal had been trained to sniff out fire scenes and to locate the presence of petroleum traces which could indicate the use of accelerants which might have been used to kindle an arson fire.
At first, although the dog stopped in a number of areas, it did not alert. At 3:26 p. m., after some of the debris had been cleared away, the dog alerted in what had been the family room indicating a petroleum accelerant. The dog alerted again at 3:31 in the same room.
Samples were removed from the suspected areas and sent to the state laboratory and photographs were taken.
At 5:30 p. m., all detectives left the area.
It is claimed that the warrantless search was in violation of defendant's constitutional rights and should be suppressed.
The local fire marshal is required by General Statutes §29-302 to investigate the cause, origin and circumstances of any fire within his jurisdiction. In this case, the local fire marshal requested that the state fire marshal assume this duty. Independent of such request the state fire marshal is mandated by General Statutes § 29-310(a) to thoroughly investigate the cause, circumstances and origin of such fires to which his attention is called.
General Statutes § 29-311, which covers authority to enter premises on which a fire has occurred provides in pertinent part:
 Sec. 29-311. Fire investigations. Warrant requirements. The Commissioner of Public Safety as State Fire Marshal, any local fire marshal within his jurisdiction, may enter into and upon any premises or building where any fire or explosion has occurred and premises adjacent thereto, without liability for trespass or damages reasonably incurred, to conduct CT Page 4993 investigations in accordance with sections 29-302 and 29-310, under the following circumstances and conditions:
 (a) During an emergency by reason of fire or explosion on any premises, they or any of them may, without a warrant, enter such premises during the suppression of the fire or explosion or within a reasonable period of time following the suppression thereof and remain for a reasonable period of time following the suppression of the fire or explosion to: (1) investigate in order to determine the cause and origin of the fire or explosion, (2) prevent the intentional or unintentional destruction of evidence and (3) prevent a rekindling of the fire.
Even though § 29-311 appears to allow a warrantless entry on to a fire scene within a reasonable time after the suppression of a fire, such entry is restricted by the United States Constitution. This rule was affirmed in Michigan v. Tyler,436 U.S. 499 98 S.Ct. 1942 (1978), and further stated in Michigan v.Clifford, 464 U.S. 287, 291, 104 S.Ct. 641, 646 (1983), as follows:
 Except in certain carefully defined classes of cases, the nonconsensual entry and search of property are governed by the warrant requirement of the Fourth
and Fourteenth Amendments. The constitutionality of warrantless and nonconsensual entries onto fire-damaged premises, therefore, normally turns on several factors: whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth Amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and, whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity.
The first question which must be addressed is whether defendant has a legitimate privacy interest in the fire-damaged property that is protected by the Fourth Amendment. In Clifford,
the court elaborated on factors which must be considered in determining whether a legitimate privacy interest existed. CT Page 4994
 (2) We observed in Tyler that reasonable privacy expectations may remain in fire-damaged premises. "People may go on living in their homes or working in their offices after a fire. Even when that is impossible, private effects often remain on the fire-damaged premises." Tyler, 436 U.S. at 505, 98 S.Ct., at 1948. Privacy expectations will vary with the type of property, the amount of fire damage, the prior and continued use of the premises, and in some cases the owner's efforts to secure it against intruders. Some fires may be so devastating that no reasonable privacy interests remain in the ash and ruins, regardless of the owner's subjective expectations. The test essentially is an objective one: "whether the expectation [is] one that society is prepared to recognize as `reasonable.'" Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J. concurring). See also Smith v. Maryland, 442 U.S. 735, 739-741, 99 S.Ct. 2577, 2579-81, 61 L.Ed.2d 220 (1979). If reasonable privacy interests remain in the fire-damaged property, the warrant requirement applies, and any official entry must be made pursuant to a warrant in the absence of consent or exigent circumstances.
As in Clifford, the property involved here was residential which could give rise to a higher expectation of privacy than commercial property. As the court pointed out in that case, people may go on living in their homes after a fire. That, however, would have been impossible here. The building was destroyed and was totally uninhabitable. No single room existed as such. The main floor appears to have collapsed into the basement in places.
Private effects which might be left in residential property after a fire could give rise to a reasonable expectation of privacy. It is doubtful, however, of any recognizable items of personal property survived the fire here. The photographs indicate that the interior of the building was reduced to ash and rubble. This was piled so thick that layers of it had to be removed to get down to the cement floor of what had been the family room.
It is significant that defendant made no effort to search for CT Page 4995 items of property. This was probably impossible and in view of the damage to the floors and walls would have been extremely dangerous.
The situation here is contrasted with that in Clifford. In that case, although the damage was extensive, a portion of the residence was largely undamaged and some personal property survived. Here, the property was destroyed and no part could be lived in.
Unlike the homeowners in Clifford, defendant made no effort to board up or secure the property. This probably would have been impossible in any event, and because of the extensive damage, could have served no useful purpose.
The only effort to secure the premises and to prevent interlopers from wandering into the premises after the fire had been extinguished was made by Detective Laria of the state Fire Marshal's Office who caused the yellow tape to be strung around the area and posted Officer Vandemere to stand guard. Defendants could have observed this and made no complaint.
In the situation here, it would have been futile as well as dangerous for the Fire Marshal's Office to attempt any investigation while the fire was being fought or at anytime prior to daylight. Considering, however, the volatile nature of the fire which totally destroyed a house in a residential area it was imperative that the Fire Marshal's Office promptly carried out its investigatory duties under §§ 29-310 and 29-311.
The fire-damaged premises had been effectively seized before the fire had been extinguished. Under the circumstances this was appropriate. Persons entering the premises would be at risk. Rafters from the upper floor were hanging and could fall at any time. Sections of the main floor were burned out and could collapse under the weight of a person attempting to walk in the area. No doubt the rubble contained exposed nails and broken glass.
From the evidence, it must be concluded that the fire which destroyed defendant's premises was so devastating that no reasonable privacy interest remained in the ash and ruins regardless of any subjective expectation which defendant might have had but did not express. Michigan v. Clifford, supra.
CT Page 4996
Accordingly, the motion to suppress is denied.
PURTILL, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 5001