**Mary Ann CIARLONE; Irene Lora; Orazio Gerbino; Anne Baez, Appellants**

v.

**CITY OF READING; Thomas McMahon, Mayor of the City of Reading in his individual and official capacity; Ryan Hottenstine, Managing Director,**

---

City of Reading in his individual and official capacity; Brad Reinhart, Code Administrator, City of Reading in his individual and official capacity; Jatinder Singh Khokhar, Department Manager of the Office of Code Services, City of Reading, in his individual and official capacity; James Orrs, Code Enforcement Officer, City of Reading, in his individual and official capacity.

No. 11–2308.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 8, 2012.

Opinion filed: July 25, 2012.

Brian C. Legrow, Esq., Paul J. Toner, Esq., Vincent B. Mancini & Associates, Media, PA, for Appellants.

Andrew B. Adair, Esq., Deasey, Mahoney, Valentini & North, Media, PA, for City of Reading; Thomas McMahon, Mayor of the City of Reading in his individual and official capacity; Ryan Hottenstine, Managing Director, City of Reading in his individual and official capacity; Brad Reinhart, Code Administrator, City of Reading in his individual and official capacity; Jatinder Singh Khokhar, Department Manager of the Office of Code Services, City of Reading, in his individual and official capacity; James Orrs, Code Enforcement Officer, City of Reading, in his individual and official capacity.

Before: McKEE, Chief Judge,
SCIRICA and AMBRO, Circuit Judges.

## OPINION

McKEE, Chief Judge.

Irene Lora, Orazio Gerbino, and Anne Baez ("Tenants") appeal the District Court's denial of their motions for judgment as a matter of law in this civil rights action that they and their landlord, Mary Ann Ciarlone ("Plaintiffs"), filed against the City of Reading, Pennsylvania ("Reading"), and certain Reading officials. Plaintiffs also challenge certain discovery and evidentiary decisions made by the District Court. For the reasons that follow, we will affirm.

## I.

Since we write primarily for the parties, who are familiar with the background of this case, we discuss the events leading to this appeal only briefly. Ciarlone is the owner and landlord of a three-unit residential rental property ("the Property") in Reading. Tenants reside in those apartments.

Plaintiffs initiated a civil rights action in the District Court against Reading, Code Administrator Brad Reinhart, Code Enforcement Officer James Orrs, and other Reading officials, raising multiple constitutional claims. During discovery, Plaintiffs subpoenaed Pennsylvania Magisterial District Judge Wallace S. Scott to testify at a deposition. Plaintiffs claimed that, in April 2007, Judge Scott heard Reinhart state that he wanted to "get back at that bitch," referring to Ciarlone. Judge Scott moved to quash the subpoena and sought a protective order. The District Court referred the motion to a United States Magistrate Judge, who granted the requested relief. In doing so, the Magistrate Judge observed that Judge Scott was "not … the only possible source of testimony regarding Defendant Reinhart's statement," for that alleged statement was "discoverable through other witnesses, such as Defendant Reinhart and [Code Enforcement Officer Joseph Esterly], who have not been deposed." (App. at 95.)

Plaintiffs later moved to lift the protective order and compel Judge Scott's deposition and trial testimony. In support of this motion, Plaintiffs noted that, while they had deposed Reinhart and Esterly, neither of them had confirmed that Reinhart had made the alleged statement about Ciarlone. The District Court denied the motion.

Plaintiffs' Fourth and Fourteenth Amendment claims against Reading, Reinhart, and Orrs ("Defendants") ultimately went to trial. At the close of Plaintiffs' case, and again after the jury returned a verdict in favor of Defendants, Tenants moved for judgment as a matter of law on their Fourth Amendment claim. The District Court denied both motions. This appeal followed.

Plaintiffs challenge the District Court's denial of the motions to lift the protective

order and for judgment as a matter of law, respectively, as well as certain evidentiary decisions made by the District Court.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court's denial of judgment as a matter of law. *McKenna v. City of Philadelphia,* 649 F.3d 171, 176 (3d Cir.2011). In conducting this review, we view the evidence in the light most favorable to the prevailing party, and "will reverse only if the record is critically deficient of the minimum quantum of evidence upon which a jury could reasonably base its verdict." *Id.* (internal quotation marks and citation omitted). We review the denial of a motion to lift a protective order, as well as a district court's rulings on the admissibility of evidence, for abuse of discretion. *Moyer v. United Dominion Indus., Inc.,* 473 F.3d 532, 542 (3d Cir.2007) (admissibility of evidence); *Shingara v. Skiles,* 420 F.3d 301, 305 (3d Cir.2005) (motion to lift protective order). "We may affirm the district court on any ground supported by the record." *Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir.1999).

## III.

■ We first examine the District Court's denial of Plaintiffs' motion to lift the protective order.[1] "[C]alling a judge to give testimony in any proceeding is a very delicate matter," *United States v. Frankenthal,* 582 F.2d 1102, 1107 (7th Cir. 1978), because "factual testimony from a judge unduly can affect a jury." *United States v. Sine,* 493 F.3d 1021, 1033 (9th Cir.2007). Here, Judge Scott was not the only person who could testify about Reinhart's alleged statement. Although the testimony provided by Reinhart and Esterly may not have been to Plaintiffs' liking, this did not render the District Court's refusal to lift the protective order an abuse of discretion.[2]

■ We now turn to the various evidentiary decisions at issue here. Plaintiffs first challenge the District Court's refusal to admit two October 2009 newspaper articles from the *Reading Eagle* (or, alternatively, to allow testimony from the author of those articles), which reported that Judge Scott had heard Reinhart state that he wanted to "get" Ciarlone. The District Court concluded that this evidence was not sufficiently trustworthy to fall within the residual hearsay exception, Fed.R.Evid. 807,[3] because the articles had been published roughly two-and-a-half years after Reinhart allegedly made that comment. Despite Plaintiffs' arguments to the contrary, that ruling was eminently reasonable and was not an abuse of discretion.[4]

---

1. Although Defendants argue that Plaintiffs waived their right to challenge the Magistrate Judge's decision granting the protective order, any such waiver does not prevent us from reviewing the District Court's refusal to lift that protective order.

2. Although the parties disagree as to whether a "deliberative process privilege" would govern Judge Scott's testimony, we need not resolve that question here.

3. "[T]he residual hearsay exception is to be used only rarely, and in exceptional circumstances, and is meant to apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *United States v. Lawrence,* 349 F.3d 109, 117 (3d Cir.2003) (quotation marks and citation omitted).

4. Plaintiffs contend that "[p]ursuant to Federal Rule of Evidence 806, [they] had the right to use the articles to impeach Defendant Reinhart and attack his credibility as a witness." (Plaintiffs' Opening Br. 52.) This claim lacks merit, for Rule 806 applies only when the declarant's hearsay statement has already been admitted. *See* Fed.R.Evid. 806.

■ Plaintiffs next contest the District Court's exclusion of a Reading City Council resolution passed shortly after the forced entry inspection of the Property. The resolution directed the Codes Department "not to undertake any forced entry inspections of private properties until a standard operating procedure is reviewed and/or developed and approved, unless there is a complaint or knowledge that a property is an imminent threat to public health and safety." (App. at 388.) The District Court excluded this evidence under Fed.R.Evid. 407, which provides that evidence of subsequent remedial measures is not admissible to prove, inter alia, culpable conduct. Although Plaintiffs correctly note that the rule allows such evidence to be admitted to establish the feasibility of precautionary measures, we are not persuaded that feasibility was an issue here. Nor are we persuaded by Plaintiffs' claim that Rule 407 is simply inapplicable. Accordingly, we cannot conclude that the District Court abused its discretion in excluding this evidence.

Plaintiffs also challenge the District Court's decision to allow Sergeant Pentheny to testify about his conversation with an unidentified ADA. Plaintiffs claim that any statements made by the ADA during that conversation are hearsay and should have been deemed inadmissible. We disagree. Defendants offered this evidence not to prove the truth of the ADA's statements, but rather to show Pentheny's and Reinhart's state of mind and explain why force was used to execute the warrant. Accordingly, this evidence was not hearsay. *See* Fed.R.Evid. 801(c). Because Plaintiffs did not establish that the probative value of this evidence was substantially outweighed by the risk of unfair prejudice, *see* Fed. R.Evid. 403, the District Court did not err in admitting this evidence.

■ Plaintiffs' last evidentiary challenge attacks the District Court's admission of testimony from Reinhart about the condition of other rental properties in Reading and "anecdotes about some issues where tenants in rental properties in the City of Reading were injured as the result of improperly maintained properties." (App. at 491.) The District Court, noting that Plaintiffs had alleged that the forced entry inspection of the Property "was some sort of retaliation or a singling out of [Ciarlone]," (*id.*), determined that this evidence was admissible to explain why they carried out the inspection in the manner that they did. Although Plaintiffs claim that this evidence was "highly prejudicial"—presumably they mean to argue that the evidence was inadmissible under Rule 403—the District Court did not abuse its discretion in concluding to the contrary. Indeed, as Defendants state in their brief, "[t]his evidence was highly probative as to why the City of Reading felt there was an urgency to enforce administrative search warrants." (Defendants' Br. 74.)

■ We conclude our review by examining the District Court's denial of Tenants' motions for judgment as a matter of law. The crux of Tenants' argument is that they were entitled to a judgment because Defendants did not notify them and give them an opportunity to consent to the inspection. They rely on *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). There, the Supreme Court "held that administrative searches had to be conducted pursuant to a warrant," and that probable cause to issue such a warrant "did not sound in terms of suspicion of criminal activity, but in terms of *reasonable* legislative or administrative standards governing the decision to search a particular building." *Michigan v. Clifford*, 464 U.S. 287, 308, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984) (emphasis added) (summarizing *Camara*). The *Camara* Court also stated that "as a practical matter and

572

in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry." *Camara*, 387 U.S. at 539–40, 87 S.Ct. 1727.

Tenants interpret the quoted excerpt from *Camara* to mean that, unless there is a citizen complaint or "other satisfactory reason for securing immediate entry," "the refusal of consent by a tenant-occupant is a precondition to seeking an administrative search warrant to conduct a planned routine inspection." (Plaintiffs' Opening Br. 29.) Yet Tenants fail to cite a single case to support this interpretation even though *Camara* was decided more than four decades ago. Moreover, Tenants do not explain how *Camara*'s use of the phrase "it seems likely" reflects the Supreme Court's intent to announce a rule of constitutional law. Accordingly, we cannot conclude that the District Court erred in rejecting their interpretation of *Camara*.[5] Since Tenants have not established that "the record is critically deficient of the minimum quantum of evidence upon which a jury could reasonably base its verdict," *McKenna*, 649 F.3d at 176 (internal quotation marks and citation omitted), we will not disturb the District Court's denial of Tenants' motions for judgment as a matter of law.

## IV.

In light of the above, we will affirm the District Court's entry of judgment in favor of Defendants.

5. Nor can we conclude that the District Court's jury instructions on Tenants' Fourth Amendment claim were in error.