[No. A039327. First Dist., Div. Three. Aug. 29, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN AVALOS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

COUNSEL

Penelope M. Cooper, Ted W. Cassman, Cooper & Arguedas and A. J. Kutchins for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Robert R. Granucci, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BARRY-DEAL, J.—Appellant Steven Avalos was charged by information with a violation of Health and Safety Code section 11383, subdivision (a)[1] (possession of components with intent to manufacture methamphetamine) and a violation of section 11378 (possession of methamphetamine for sale). Appellant pleaded not guilty, and thereafter moved to suppress evidence pursuant to Penal Code section 1538.5 and to dismiss the information pursuant to Penal Code section 995. The motions were denied. Appellant thereafter waived a jury trial and submitted the case on the preliminary hearing transcript. The court found him guilty of a section 11378 violation (possession for sale) but not guilty of a section 11383, subdivision (a), violation (possession with intent to manufacture).[2]

On appeal, appellant contends that the trial court erred in refusing to suppress evidence obtained as a result of an alleged unlawful warrantless search of his residence. He also contends that, although the evidence arguably supports a conviction for simple possession of methamphetamine, the evidence does not support a conviction for possession for sale.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

[2] Codefendant Susan Haworth was charged jointly with appellant with a violation of section 11383, subdivision (a), and was found not guilty of that charge.

## I.  *Facts*

The motions to suppress evidence and to dismiss the information were submitted on the preliminary hearing transcript, which reveals the following facts.

On the morning of October 4, 1984, at approximately 7:45 a.m., firefighters responded to a report of a residential fire in Clayton, California. Captain Clary of the Contra Costa County Eastern Fire Protection District arrived on the scene after the firefighters from his district had extinguished the fire. He immediately began to check the residence for residual fires. He observed fire damage in the kitchen, hallway, and one bedroom of the residence. In the bathroom he saw the bathtub draped with stainless steel, glass, plastic, and tubing. A member of the fire crew who was also an off-duty deputy sheriff informed him that the materials and apparatus appeared to be a methamphetamine laboratory. He also found several containers marked "acetone." Because the off-duty deputy sheriff indicated to him that the residence was possibly a "crime scene," the captain ordered everyone to evacuate the residence and remain outside.

The fire chief summoned the Contra Costa County Sheriff's office. Deputy Michael Douglas arrived at the scene at approximately 8:45 a.m. He had been advised by a police lieutenant that there had been a fire at the residence and that laboratory equipment had been found. Upon his arrival, Deputy Douglas spoke with Captain Clary. Captain Clary took him inside and showed him the laboratory equipment and barrels of chemicals. Deputy Douglas, who had previously observed methamphetamine laboratories, then began to prepare a search warrant. While the deputy was preparing the warrant, appellant and codefendant Haworth arrived and indicated they lived at the residence. Deputy Douglas placed them both under arrest for the manufacture of methamphetamine. He searched them and found on appellant a clear plastic baggie containing a substance he suspected of being methamphetamine.

In denying the motion to suppress at the preliminary hearing, the magistrate found that there had been an ongoing investigation and that "[t]he extremely hazardous nature of the chemicals commonly associated with clandestine methamphetamine manufacture has been judicially noticed . . ." and that the "firefighting personnel at the scene had a continuing duty to identify, remove and dispose of those chemicals and their intrusion into the residence was by no means complete at the time of Detective Douglas' entry."

## II. *Suppression of Evidence*

■ Appellant contends that the baggie of methamphetamine constituted the tainted fruit of an unlawful warrantless entry by Deputy Douglas into his residence and therefore should have been suppressed.

■ Our Supreme Court has held that the "Right to Truth-in-Evidence" provision of the California Constitution (Cal. Const., art. I, § 28, subd. (d)) abrogates California's independent exclusionary rule unless the seizure thereof was in violation of the federal exclusionary rule under the Fourth Amendment to the United States Constitution. (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744].)

■ A warrantless entry by law enforcement officials may be lawful under the Fourth Amendment when there is a compelling need for official action and no time to secure a warrant. (*Michigan* v. *Tyler* (1978) 436 U.S. 499, 509 [56 L.Ed.2d 486, 498, 98 S.Ct. 1942]; *Warden* v. *Hayden* (1967) 387 U.S. 294, 298-299 [18 L.Ed.2d 782, 787, 87 S.Ct. 1642].) Similarly, in the regulatory field, the United States Supreme Court has recognized the importance of "prompt inspections, even without a warrant, . . . in emergency situations. [Citations.]" (*Michigan* v. *Tyler, supra,* 436 U.S. at p. 509 [56 L.Ed.2d at p. 498]; *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 539 [18 L.Ed.2d 930, 941, 87 S.Ct. 1727].)

■ A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze. (*Michigan* v. *Clifford* (1984) 464 U.S. 287, 293 [78 L.Ed.2d 477, 483, 104 S.Ct. 641]; *Michigan* v. *Tyler, supra,* 436 U.S. at p. 509 [56 L.Ed.2d at p. 498].) The exigency justifying the warrantless entry does not end immediately when the fire is extinguished. An investigation of the fire's origin may be necessary to prevent its recurrence, as through the detection of continuing dangers such as faulty wiring or a defective furnace. Accordingly, "officials need no warrant to *remain* for 'a reasonable time to investigate the cause of a blaze after it has been extinguished.' [Citation.]" (*Michigan* v. *Clifford, supra,* 464 U.S. at p. 293 [78 L.Ed.2d at pp. 483-484], fn. omitted, citing *Michigan* v. *Tyler, supra,* 436 U.S. at p. 510 [56 L.Ed.2d at p. 499].) Further, the interests of public safety may justify a warrantless postfire investigation where necessary to ensure against any immediate danger of *future* fire hazard. (*Clifford, supra,* at p. 297, fn. 8 [78 L.Ed.2d at p. 486].) Such investigation may continue over a period of time with entry and reentry. (*Id.,* at p. 293, fn. 3 [78 L.Ed.2d at p. 484]; *Michigan* v. *Tyler, supra,* 436 U.S. at p. 511 [56 L.Ed.2d at p. 500].)

In *Tyler,* a fire broke out in the defendant's furniture store, to which the local fire department responded. At approximately 2 a.m., as smoldering

embers were being doused, the fire chief was alerted to the discovery of containers of flammable liquid and summoned a police detective to investigate possible arson. By 4 a.m. the fire had been extinguished, and the firefighters departed. The fire chief and the detective removed the containers and left. At 8 a.m. the fire chief returned with his assistant for a cursory examination of the building. About an hour later the assistant and the detective made another examination and removed pieces of evidence.

The court held that the initial warrantless investigation by the fire chief and police detective to determine the fire's cause was constitutional, and that the subsequent morning reentries were no more than a continuation of the first entry and therefore did not require a warrant. (*Michigan* v. *Tyler, supra,* 436 U.S. at pp. 510-511 [56 L.Ed.2d at p. 499].) The court further held, however, that warrantless entries occurring after the day of the fire, which "were clearly detached from the initial exigency and warrantless entry," violated the Fourth Amendment. (*Id.,* at p. 511 [56 L.Ed.2d at p. 499].)

In *Michigan* v. *Clifford, supra,* 464 U.S. 287, the court held that a warrantless arson investigation in a fire-damaged building, begun six hours after the fire had been extinguished and fire and police officials had left the scene, was not a continuation of an earlier post-fire search and therefore violated the Fourth Amendment.

California courts have recognized the potential exigencies, independent of those of a fire, created by an illegal methamphetamine laboratory. In *People* v. *Messina* (1985) 165 Cal.App.3d 937 [212 Cal.Rptr. 75], the Court of Appeal, citing various government sources, took judicial notice of the extreme toxicity and flammability of the chemicals used in the manufacture of methamphetamine: "Beyond a shadow of doubt, the presence of these chemicals in an unprofessional laboratory in a residential area constitutes an emergency which requires immediate and proper response by law enforcement." (*Id.,* at p. 944, fn. omitted.) The court held that the police officer's warrantless arrest of the defendant and search of his residence, based on the smell of phenyl-2-propanone and a tip that methamphetamine was being manufactured there, was reasonable. (*Id.,* at p. 945.)

In *People* v. *Duncan* (1986) 42 Cal.3d 91, 103 [227 Cal.Rptr. 654, 720 P.2d 2], our Supreme Court held that the reasonableness of a warrantless entry into premises housing a drug laboratory must be evaluated on its own particular facts. There a police officer was informed by another officer that an apparent illicit drug laboratory was operating in a residence. The smell of ether emanating from the residence was strong enough to be noticeable

from the driveway, and the police officer testified that he entered the residence to ascertain whether the laboratory was going to blow up.

In reviewing the reasonableness of the warrantless entry, the court observed the extremely volatile nature of chemicals, including ether, involved in the production of drugs such as methamphetamine when used unprofessionally. The court concluded that the officer's warrantless entry was justified by a reasonable belief that exigent circumstances requiring immediate action existed. (*People* v. *Duncan, supra,* 42 Cal.3d at p. 105.)

Here, Deputy Douglas testified that he believed a fire hazard probably existed in the house when he was advised that there was a possible laboratory inside and that there had already been a fire; that he felt the fire chief had remained there in charge of the location because of the potential hazard; and that he was investigating the possibility that a drug laboratory was on the premises.

Under the principles enunciated in *Tyler* and *Clifford,* in conjunction with those of *Duncan,* the circumstances here justified the warrantless entry. The firefighters' initial entry to fight the fire and Captain Clary's subsequent search for continuing fire dangers were of course justified by exigent circumstances. The firefighters' discovery of apparatus consistent with a methamphetamine laboratory, combined with the fact of the outbreak of the fire, warranted reentry to investigate a possibly volatile situation with the danger of future, if not an immediate, fire hazard. Under these circumstances, Captain Clary's reentry into the residence with Deputy Douglas less than one hour after the fire had been extinguished, and while the firefighters remained on the scene, was a continuation of the captain's initial entry and investigation. Under *Tyler,* the lack of evidence of an emergency situation requiring swift action to prevent imminent danger to life or damage to property did not preclude a warrantless reentry.

For these reasons, we conclude the trial court did not err in denying appellant's motion to suppress.

### III.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

* See footnote, *ante,* page 1517.

## IV. *Disposition*

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.