[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SUPPRESS
The defendant is charged with arson, arising out of a fire at his home on November 15, 1990. He has moved to suppress photographs of the outside and inside of his house, and portions of charred flooring, on the ground that they were obtained without a search warrant, and therefore illegal.
I. Facts.
On November 15, 1990, the Morris Fire Department responded to a house fire alarm at the defendant's home, 34 Deer Island Trail, Morris, Connecticut. Firefighters and equipment arrived at the scene at 8:37 a., m. to begin fire suppression measures. At 8:51 a.m., the fire was under control, but the potential for "hot spots" remained. At 9:11 a.m. Joel Skilton, the local fire marshal, requested the State Fire Marshal's office for assistance in carrying out an investigation to determine the cause and origin of the fire. At 10:07 a.m. the pumper and rescue truck left the scene. Remaining on the premises were Mr. Skilton (local fire marshal), Morris' deputy fire chief, Morris' fire captain and one other fireman. Also still at the scene was a "brush truck", which was a 250 gallon pumper standing by as a precaution against "hot spots" rekindling.
Pursuant to Mr. Skilton's 9:11 a.m. request, Detectives Pierpont and Fernandez from the State Fire Marshal's office arrived at the house at 10:53 a.m., and met with Mr. Skilton. Detective Pierpont had brought an accelerant-detecting dog to the scene. Mr. Skilton informed the detectives of his findings.
After completing a walk around the premises, during CT Page 1385 which they photographed the exterior, Pierpont, Fernandez and Skilton entered the house where they took more pictures. They checked the various rooms of the house in an attempt to ascertain the cause and origin of the fire, and as part of that process moved debris and furniture. In the living room, they observed a "low burn" pattern and "pour patterns" on the living room floor, which indicated the presence of a flammable liquid. Thereafter the accelerant-detecting dog was brought into the house, and he alerted to pour pattern areas. Based on that investigation, four samples of charred wood were taken from four such areas.
While the investigation was taking place, a rekindling of the fire occurred in the roof, which the firefighters extinguished. Photographs of the inside and outside of the house, identified as number 9 and subsequent photos on Detective Pierpont's report, as well as the above described samples of charred wood, were taken after the dog was used to identify the areas of accelerant use. It is these photos and the wood samples that the defendant seeks to suppress.
II. Law.
Several Connecticut statutes are pertinent to the court's inquiry.
Section 29-311 of the General Statutes provides as follows:
 The commissioner of public safety as state fire marshall, any local fire marshall within his jurisdiction, and all duly authorized fire and police personnel acting within their jurisdiction may enter into and upon any premises or building where any fire or explosion has occurred and premises adjacent thereto, without liability for trespass or damages reasonably incurred, to conduct investigations in accordance with section 29-302
and 29-310, under the following circumstances and conditions:
 (a) During an emergency by reason of fire . . . on any premises, they or any of them may, without CT Page 1386 warrant, enter such premises during the suppression of the fire or explosion or within a reasonable period of time following the suppression thereof and remain for a reasonable period of time following the suppression of the fire . . . to: (1) investigate in order to determine the cause and origin of the fire; (2) prevent the intentional or unintentional destruction of evidence, and (3) prevent a rekindling of the fire.
Section 29-302 provides:
 The local fire marshal shall, in accordance with the provisions of section 29-311, investigate the cause, origin and circumstances of any fire . . . within his jurisdiction, by reason of which property has been destroyed or damaged, . . . and shall especially investigate whether such fire was the result of an incendiary device or the result of carelessness, design or any criminal act; and the commissioner of public safety as state fire marshal, or the deputy fire marshal under his direction, may supervise and direct such investigation.
Section 29-310(a) provides:
 The commissioner of public safety as state fire marshal shall thoroughly investigate the cause, circumstances and origin of all fires . . . to which his attention has been called, in accordance with the provisions of this part, by reason of which any property has been destroyed or damaged . . . . and shall especially examine and decide as to whether such fire was the result of carelessness, design, an incendiary device or any other criminal act.
In a recent Connecticut case our Appellate Court approved the warrantless search of a burned out apartment by firefighters and an arson investigator who conducted this search immediately after the fire was brought under control while the exigency still existed.
 It is well established that a burning building is an exigent circumstance that justifies warrantless CT Page 1387 entry by firefighters. Michigan v. Clifford, 464 U.S. 287, 299-300, 104 S.Ct. 641, 78 L.Ed.2d 477
(1984); Michigan v. Tyler, 436 U.S. 499, 509-10, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Fire officials may remain at the scene without a warrant until all of their duties are completed. Among their duties, aside from dousing the blaze, are to conduct an overhaul; Steigler v. Anderson, 496 F.2d 793, 795
(3d Cir. 1974); United States v. Johnson, 524 F. Sup. 199, 204 (D. Del. 1981), rev'd in part, 690 F.2d 60 (3d Cir. 1982), cert. denied, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983); and to investigate the cause of the fire. Michigan v. Tyler, supra.
 The warrantless fire investigation that occurred in this case is closely analogous to that approved in United States v. Johnson, supra. In that case, there was a fire in the second floor front bedroom of a house. After overhaul procedures revealed controlled substances in the rear bedroom of the second floor, a federal drug enforcement officer was summoned. He finally arrived two and one-half hours after the fire had been extinguished. The fire investigator suspected that either arson or faulty wiring was the cause of the fire. While inspecting the wiring in the basement, the fire investigator noticed certain equipment, which the drug enforcement officer later identified as drug manufacturing equipment.
State v. Wilson-Bey, 21 Conn. App. 162, 167 (1990).
As the Supreme Court of the United States has stated:
 A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze. Moreover, in Tyler
we held that once in the building, officials need no warrant to remain[3] for "a reasonable time to investigate the cause of a blaze after it has been extinguished." 436 U.S. at 510, 56 L.Ed.2d 486, 98 S.Ct. 1942. . . . The aftermath of a fire often presents exigencies that will not tolerate the CT Page 1388 delay necessary to obtain a warrant or to secure the owner's consent to inspect fire-damaged premises.[4] Because determining the cause and origin of a fire serves a compelling public interest, the warrant requirement does not apply in such cases.
Footnote 3, supra states:
 We do not suggest that firemen fighting a fire normally remain within a building. The circumstances, of course, vary. In many situations actual entry may be too hazardous until the fire has been wholly extinguished, and even then the danger of collapsing walls may exist. There, the effort to ascertain the cause of a fire may extend over a period of time with entry and reentry. The critical inquiry is whether reasonable expectations of privacy exist in the fire-damaged premises at a particular time, and if so, whether exigencies justify the reentries.
Footnote 4, supra states:
 For example, an immediate threat that the blaze might rekindle presents an exigency that would justify a warrantless and nonconsensual postfire investigation. "Immediate investigation may also be necessary to preserve evidence from intentional or accidental destruction." See Michigan v. Tyler, 436 U.S. 499, 510, 56 L.Ed.2d 486, 98 S.Ct. 1942
(1978).
Michigan v. Clifford, 78 L.Ed. 477, 483-484 (1984),464 U.S. 287, 104 S.Ct. 641. In this Michigan v. Clifford
case, the fire investigation was held to be an unreasonable search, but the investigation of the cause of the fire occurred when investigators returned to the scene 6 1/2 hours after the fire was suppressed, and insurance agents had begun to board up the premises, showing that exigent circumstances had ended.
In the case at hand, entry and re-entry into the defendant's premises to investigate the cause and origin of the fire is consistent with the exigencies of the CT Page 1389 situation.
III. Conclusions.
The court concludes that the fire officials initially entered the defendant's house during an emergency in order to suppress the fire, and again within a reasonable period of time following suppression of the fire, and remained for a reasonable period of time to investigate in order to determine the cause and origin of the fire, to prevent the intentional or unintentional destruction of evidence and to prevent a rekindling of the fire. They remained only long enough to determine both cause and origin of the fire. Their activities constituted a single unified investigation.
The court further finds that the use of the accelerant-detecting dog was part of the cause and origin investigation and that the dog was an investigative tool. The fire officials had a reasonable and articulable suspicion to conduct the canine sniff; therefore, it was legally appropriate. If the defendant had an expectation of privacy inside his home prior to the accelerant detecting dog's work, such an expectation would not be considered reasonable by the citizens of Connecticut, because the fire officials' duties had not yet been completed.
The fire officials, as part of their cause and origin investigation, moved debris and rubble. The Supreme Court in Clifford commented as follows:
 The plain-view doctrine must be applied in light of the special circumstances that frequently accompany fire damage. In searching solely to ascertain the cause, firemen customarily must remove rubble or search other areas where the cause of fires are likely to be found. An object that comes into view during such a search may be preserved without a warrant.
Clifford, supra, page 485, f.n. 6.
When the debris and rubble were removed in the instant case as part of the overhaul, the "low burn" and CT Page 1390 "pour patterns" became evident. This suggested the use of an accelerant. Trained fire investigators such as those in this case, would have seized the charred wood routinely. It was in plain view and would have been obtained even if the dog had not been used.
The motion to suppress is denied.
RICHARD A. WALSH, J.